696 F.2d 707
 35 UCC Rep.Serv. 661
 In the Matter of SAN JUAN PACKERS, INC., Debtor.
PEOPLES STATE BANK, a Washington corporation, Plaintiff-Appellee,
v.
SAN JUAN PACKERS, INC., a Washington corporation, Defendant,
and
St. Paul Bank for Cooperatives, a national bank; American
Farms Cooperative, Inc., a Wisconsin corporation; National
Can Company, a foreign corporation; the Bank of California,
N.A., a national banking corporation; Rainier National
Bank, a Washington corporation, Additional Defendants,
and
NATIONAL CAN CORPORATION, Third Party Plaintiff-Appellant,
v.
Clare HELLYER, Peter Hellyer, Mike Roorda and Roy Bender,
Third Party Defendants-Appellees.
 No. 79-4238.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 5, 1981.
Decided Jan. 12, 1983.
 
 Laurie D. Kohli, T. Dennis George, George, Hull & Porter, Seattle, Wash., for defendant.
 Charles P. Nomellini, Seattle, Wash., for plaintiff-appellee.
 Appeal from the United States District Court for the Western District of Washington.
 Before BROWNING, Chief Judge, TANG, Circuit Judge, and HEMPHILL,* District Judge.
 PER CURIAM.
 
 
 1
 This is a dispute between a secured creditor of a bankrupt food processor and a secured creditor of farmers from whom the food processor bought vegetables. The food processor, San Juan Packers, Inc., bought cans on credit from a can manufacturer, National Can Corporation, and granted the can manufacturer a floating lien on all of its inventory. In late summer, 1976, the food processor bought vegetables from many farmers, including the three involved in this litigation. These three farmers had obtained financing from Peoples State Bank and had granted the bank a security interest in their crops and the "proceeds" thereof.
 
 
 2
 The food processor filed a petition in bankruptcy after it had received the farmers' vegetables and processed and sold a portion of them, but before it had finished paying all purchase price installments due the farmers. Not having been paid by the food processor, the farmers did not pay the bank. The bank brought this adversary proceeding in bankruptcy court against all of the food processor's secured creditors to establish the priority of the bank's security interest in the farmers' vegetables and in the cash proceeds thereof. The parties agreed to the sale of all vegetables in the food processor's possession and creation of a fund from the proceeds to satisfy any judgment that might arise from this action.
 
 
 3
 The bankruptcy court found for the bank, and the can manufacturer appealed to the district court, which affirmed. The can manufacturer appeals to this court, advancing three contentions.
 
 I.
 
 4
 The can manufacturer first contends that money received by the food processor for the farmers' vegetables are not "proceeds" to which the bank's security interest attached under its security agreements with the farmers.
 
 
 5
 The Uniform Commercial Code (UCC)[1] provides that "[p]roceeds includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of." Section 9-306(1). Under this definition, the money the food processor received for the farmers' vegetables is "proceeds" unless the vegetables ceased to be collateral when purchased by the food processor.
 
 
 6
 " 'Collateral' means the property subject to a security interest ...." Section 9-105(1)(c). "Except where ... Article otherwise provides, a security interest continues in collateral notwithstanding sale ... by the debtor unless his action was authorized by the secured party ...." Section 9-306(2). Since the can manufacturer does not dispute the bankruptcy court's finding that the bank did not authorize the sale free of its security interest, and Article 9 does not otherwise provide,[2] it would appear that the bank's security interest continued in the vegetables after their sale to the food processor, that the vegetables remained "collateral," and that whatever was received by the food processor when the vegetables were sold is "proceeds."
 
 
 7
 The can manufacturer points out that section 9-306(2) provides that a security interest continues, "notwithstanding sale ... by the debtor and ... in any identifiable proceeds including collections received by the debtor " (emphasis supplied), and argues that the bank's security interest was not saved by section 9-306(2) when the vegetables were sold and cash received by the food processor rather than by the farmers because the farmers and not the food processor were the "debtors." But under Sec. 9-105(1)(d), the food processor is the "debtor":
 
 
 8
 (1) In this article, unless the context otherwise requires:
 
 
 9
 (d) "Debtor" means the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral .... Where the debtor and the owner of the collateral are not the same person, the term "debtor" means the owner of the collateral in any provision of the Article dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires.
 
 
 10
 (emphasis supplied).
 
 
 11
 Official Comment 2 to section 9-105 makes it clear that an owner of the collateral is a "debtor" whether he acquired his rights in the collateral at the time the security interest was created or at a later date:
 
 
 12
 In all but a few cases the person who owes the debt and the person whose property secures the debt will be the same. Occasionally, one person furnishes security for another's debt, and sometimes property is transferred subject to a secured debt of the transferror which the transferee does not assume; in such cases, under the second sentence of the definition, the term "debtor" may, depending on the context, include either or both such persons.
 
 
 13
 (emphasis supplied).
 
 
 14
 The can manufacturer protests that under this view the bank could follow these vegetables into the hands of the ultimate consumer.[3] But this is precisely what the plain language of the UCC requires. See B. Clark, The Law of Secured Transactions under the Uniform Commercial Code p 8.4[a] at 8-22 to -23 (1980); R. Henson, Secured Transactions under the Uniform Commercial Code 143-44 (1979); cf. Garden City Production Credit Ass'n. v. Lannan, 186 Neb. 668, 186 N.W.2d 99 (1971) (plaintiff's security interest in livestock continued through unauthorized sale by farmer and resale by farmer's transferee). As a practical matter, of course, it would be difficult for the secured party to identify its collateral far down a chain of purchasers.
 
 
 15
 Cases relied upon by the can manufacturer did not consider section 9-105(1)(d). See Get It Kwik of America, Inc. v. First Alabama Bank, 361 So.2d 568 (Ala.Civ.App.1978); Beneficial Finance Co. v. Colonial Trading Co., 4 U.C.C.Rep.Serv. (Callaghan) 672 (Pa.Ct. of Common Pleas 1967).
 
 II.
 
 16
 The can manufacturer's second argument is that by the terms of section 9-306(2) the bank's security interest continued only in "identifiable proceeds" and was lost because the food processor mixed together vegetables purchased from various farmers making it impossible to identify vegetables, or proceeds from the sale of vegetables remaining in the food processor's possession, as attributable to any particular farmer.
 
 
 17
 Section 9-315 of the UCC requires rejection of this argument.[4] The bank had a perfected security interest in the farmers' vegetables, and those vegetables became part of a mass of vegetables in the hands of the food processor, so commingled that their identity became lost in the mass. By the express terms of section 9-315(1), where collateral loses its identity by commingling or processing, the security interest continues in the mass or product--and it is not disputed that the proceeds in the fund established in this case can be traced to commingled vegetables in the hands of the food processor.
 
 
 18
 Cases relied upon by the can manufacturer involved nonfungible goods that did not lose their identity when commingled with other goods. See Howarth v. Universal C.I.T. Credit Corporation, 203 F.Supp. 279 (W.D.Pa.1962); Chrysler Credit Corporation v. Bank of Wiggins, 358 So.2d 714 (Miss.1978).
 
 III.
 
 19
 Finally, the can manufacturer argues that if section 9-315 is applied, the can manufacturer was entitled to share in the fund since the can manufacturer had a security interest in the vegetables in the food processor's possession grown by farmers other than the three in whose crops the bank had a security interest, and by the terms of section 9-315 each party whose collateral is commingled in the mass is entitled to a ratable share of the proceeds of the sale of the mass.
 
 
 20
 The bank resists application of section 9-315 on the ground, relied upon by the district court, that section 9-315(1) "requires the attachment of two security interests to the product or mass." The attachment of two security interests to the product or mass is an explicit condition only to the operation of section 9-315(2), not section 9-315(1).[5] Moreover, this condition to the application of section 9-315(2) was satisfied because both the bank's interest in the vegetables of the three farmers with whom the bank had its security arrangement and the can manufacturer's security interest in the other vegetables in the food processor's inventory attached to the mass of each variety of vegetables when the vegetables of the same variety purchased from various farmers were commingled.
 
 
 21
 The bank contends further that section 9-315 does not apply because the vegetables were not sufficiently processed. The statute, however, refers to processing and commingling, both in the caption[6] of the section and in section 9-315(1)(a). "Commingled" is not a term of art in this context; it simply means "to mix together," Webster's Third New International Dictionary 457 (1961), or "[t]o put together in one mass." Black's Law Dictionary 246 (5th ed. 1979). As the bank points out, Official Comment 3 to section 9-315 refers to commingling flour, sugar and eggs into cake mix, a process involving more than mere mixing, but there is no indication that the drafters meant to exclude simple mixing of fungible goods.
 
 IV.
 
 22
 Application of section 9-315(2) does not, however, completely resolve this case. It is not clear from the record whether vegetables of the bank's three farmers were sold between the time these vegetables were delivered to the food processor and the time the food processor filed a bankruptcy petition. If such sales occurred and proceeds were not dissipated before bankruptcy, they are available to the secured parties subject to the provisions of section 9-306(4).[7] Proceeds of sales made under the supervision of the bankruptcy court are, of course, not subject to section 9-306(4). Furthermore, there may be more than one section 9-315(2) ratio for each mass of vegetables because additional deliveries from farmers other than the three having security arrangements with the bank were subject to the can manufacturer's security interest; when such deliveries were added to the various masses of corn, peas, and carrots, the proportion of the security interest in each mass to which the can manufacturer was entitled increased.
 
 
 23
 The judgment appealed from is therefore vacated, and the case is remanded for further proceedings:
 
 
 24
 (1) to determine what proportion of each mass of the various vegetables was sold by the food processor prior to its bankruptcy;
 
 
 25
 (2) to apportion the available proceeds, if any, from such sales between the bank and the can manufacturer in accordance with sections 9-315(2) and 9-306(4); and
 
 
 26
 (3) to apportion the proceeds of sales made under the bankruptcy court's supervision between the bank and the can manufacturer in accordance with section 9-315(2).
 
 
 27
 Each party is to bear its own costs on appeal.
 
 
 28
 VACATED AND REMANDED.
 
 
 
 *
 Honorable Robert W. Hemphill, Senior Judge, United States District Court for the District of South Carolina, sitting by designation
 
 
 [1]
 The 1962 version of Article 9 of the UCC was in effect in Washington until 1982 when the 1972 version was adopted. Wash.Rev.Code Ann. Secs. 62A.9-101 to -507. All statutory references are to the UCC unless otherwise indicated
 
 
 [2]
 Section 9-307(1) provides that some buyers in the ordinary course of business take free of security interests, but specifically excludes "a person buying farm products from a person engaged in farming operations."
 
 
 [3]
 Although a person who does not purchase directly from farmers does not come within the farm products exception, he still does not take free of the original lender's security interest because that interest was not "created by his seller." Sec. 9-307(1)
 
 
 [4]
 Section 9-315 reads:
 Priority When Goods Are Commingled or Processed
 (1) If a security interest in goods was perfected and subsequently the goods or a part thereof have become part of a product or mass, the security interest continues in the product or mass if
 (a) the goods are so manufactured, processed, assembled or commingled that their identity is lost in the product or mass;
 * * *
 (2) When under subsection (1) more than one security interest attaches to the product or mass, they rank equally according to the ratio that the cost of the goods to which each interest originally attached bears to the cost of the total product or mass.
 
 
 [5]
 The passage from Gilmore's treatise quoted by the district court is not to the contrary. "Section 9-315(2) establishes the priorities when, under subsection (1), 'more than one security interest attaches to the product or mass.' " G. Gilmore, 2 Security Interests in Personal Property 851 (1965)
 
 
 [6]
 "Section captions are parts of this Title." Wash.Rev.Code Ann. Sec. 62A.1-109
 
 
 [7]
 Section 9-306(4) reads in pertinent part:
 (4) In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest
 * * *
 (d) in all cash and deposit accounts of the debtor, if other cash proceeds have been commingled or deposited in a bank account, but the perfected security interest under this paragraph (d) is
 * * *
 (ii) limited to an amount not greater than the amount of any cash proceeds received by the debtor within ten days before the institution of the insolvency proceedings and commingled or deposited in a bank account prior to the insolvency proceedings less the amount of cash proceeds received by the debtor and paid over to the secured party during the ten day period.