4 F.3d 993
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
BUSINESS CREDIT LEASING, INC., Plaintiff-Appellant,
v.
DANOR CORP., Defendant,
Wolverine American, Inc., Defendant-Counterclaimant-Appellee,
Crane National Vendors, Defendant-Counterclaimant-Appellee.
 No. 92-2061.
 United States Court of Appeals, Sixth Circuit.
 Sept. 10, 1993.
 
 Before: MILBURN and BOGGS, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Business Credit Leasing (BCL) appeals from a decision of the district court awarding to appellees Wolverine American, Inc. and Crane National Vendors the vending machines in which appellees had a perfected security interest, as well as the lease payments on those machines. BCL appeals only that portion of the district court order awarding the lease payments, contending that the Uniform Commercial Code (UCC) allows a seller to obtain either collateral or proceeds, but not both. We affirm the award.
 
 
 2
 * Wolverine distributes vending machines. Crane manufactures and sells vending machines. Danor operated a vending machine route. Danor acquired vending machines, placed them at various locations, and arranged for them to be kept filled with product and emptied of money. Danor bought vending machines from various manufacturers and distributors, then either leased the machines directly to third parties or sold them to other companies.
 
 
 3
 Between October 1990 and February 1991, Danor bought 56 vending machines from Crane and 8 machines from Wolverine. Both Crane and Wolverine filed statements covering the vending machines with the Michigan Secretary of State and the County Register of Deeds, thus perfecting a purchase money security interest in the vending machines.
 
 
 4
 Both Wolverine's and Crane's contracts with Danor prohibited Danor from selling, transferring, or encumbering the vending machines until Danor had fully paid the contract price. The machines all operated as cross collateral. That is, Danor would not acquire title to any machine until all of the machines were paid for in full. Nonetheless, after Danor represented to BCL that it was a seller of vending machines and had clear title, Danor sold 60 machines to BCL.[1] BCL paid Danor in full for all the machines it bought. Of the 60 machines that BCL bought from Danor, 8 were machines that Wolverine had sold to Danor and 25 were machines that Crane had sold, both groups under the conditional sales contracts.
 
 
 5
 Danor defaulted on its obligations to Crane and Wolverine. Both Crane and Wolverine sued Danor in state court, prevailed, and began to take possession of the vending machines. BCL discovered the legal action when some of the BCL lessees told BCL that the vending machines had been removed from their premises.
 
 
 6
 BCL's response was to start this action. On November 8, 1991, BCL sued Crane and Wolverine.[2] BCL sought damages and injunctive and declaratory relief. Crane and Wolverine answered that they had valid perfected purchase money security interests in the machines, which interests were superior to any competing interest asserted by BCL. Crane and Wolverine also counterclaimed against BCL, and sought an award of the amount of the lease payments or proceeds collected by BCL.
 
 
 7
 BCL argued in court that it should be afforded protection as a buyer in the ordinary course of business and that all rights, title and interest in the machines properly belonged to BCL. Crane and Wolverine contended that Danor was not a seller and BCL was not a buyer in the ordinary course of business.
 
 
 8
 The district court concluded after a bench trial that Danor was not a seller and BCL was not a buyer of vending machines as defined in the Michigan UCC. The district court also concluded that the lease payments, which were approximately $39,000 with respect to the Crane machines and $4,800 with respect to the Wolverine machines, were appropriately the property of Crane and Wolverine respectively. Thus, both the machines and the proceeds were turned over to Crane or Wolverine.
 
 
 9
 BCL moved to amend the judgment to eliminate the award of proceeds to Crane and Wolverine. The district court denied the motion. BCL filed a notice of appeal. It is only contesting the award of proceeds.
 
 II
 
 10
 The UCC allows a seller to proceed against a debtor to obtain satisfaction of the debt owed by seeking return of the collateral and/or seeking proceeds of that collateral. See M.C.L. Sec. 440.9306, Official UCC Comment 3.
 
 
 11
 BCL contends that the UCC allows appellees to proceed only against Danor because Danor was the original debtor. BCL is mistaken. The UCC allows appellees to proceed for both collateral and proceeds against BCL as well.[3] The security interest does not terminate on transfer of the collateral. Matter of San Juan Packers, Inc., 696 F.2d 707 (9th Cir.1983), interpreted a UCC provision with wording identical to Michigan's statute, and concluded that the holder of the collateral is a debtor whether he acquired his rights in the collateral at the time the security interest was created, or at a later date. Therefore, the creditor could proceed against the collateral and the proceeds even though the holder was not the original debtor. Similarly, Matter of Guaranteed Muffler Supply Company, Inc., 1 B.R. 324 (Bkcy.N.D.Ga.1979), held that a secured party does have the right to claim transferees' proceeds.
 
 
 12
 Lease payments constitute proceeds, and are therefore properly remittable. Lease payments generally are proceeds. The UCC defines proceeds as follows:
 
 
 13
 "Proceeds" includes whatever is received upon the sale, exchange, collection or other disposition of collateral, or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. Money, checks, deposit accounts, and the like are "cash proceeds." All other proceeds are "noncash proceeds."
 
 
 14
 M.C.L. Sec. 440.9306(1).
 
 
 15
 The fact that a creditor seeks to recover collateral does not limit its ability to seek proceeds, so long as the creditor does not recover more than it is owed. Official UCC Comment 3 to M.C.L. Sec. 440.9306 reads:
 
 
 16
 In most cases when a debtor makes an unauthorized disposition of collateral, the security interest, under prior law and under this Article, continues in the original collateral in the hands of the purchaser or other transferee. That is to say, since the transferee takes subject to the security interest, the secured party may repossess the collateral from him or in an appropriate case maintain an action for conversion. Subsection (2) codifies this rule. The secured party may claim both proceeds and collateral, but may of course have only one satisfaction.
 
 
 17
 BCL interprets the word "satisfaction" to mean a discrete method of satisfying the creditor. Thus, says BCL, a creditor can proceed against a debtor for either the collateral or for the proceeds of the collateral, but can only obtain one of the two even if, by receiving both, the creditor still would not be made whole. This creative interpretation of the word "satisfaction" is not the law. Appellees are not entitled to be made more than whole, that is, to receive more than one satisfaction. However, they are entitled to pursue more than one avenue in their effort to obtain complete satisfaction.
 
 
 18
 The ability to attach proceeds in this case is also not limited by the fact that there was no perfected security interest in the underlying chattel paper. Having a perfected purchase money security interest entitles the creditor to proceed against the secured item and its proceeds. It is not necessary for the creditor to perfect a security interest in any underlying chattel paper that may happen to be attached to the secured item.
 
 
 19
 It is also not necessary, as BCL argues, that the collateral be unavailable before proceeds can be reached. The fact that in San Juan Packers the collateral had transformed or was otherwise unavailable (the collateral was vegetables that had been sold) was not the basis on which recovery was had against the proceeds.
 
 
 20
 BCL could have discovered encumbrances on the machines had it properly checked. Instead, it purchased, or financed the purchase of, the machines from Danor at its peril, and must remit the proceeds to appellees.
 
 
 21
 We AFFIRM the ruling of the district court.
 
 
 
 [1]
 Crane characterizes BCL as a financial services company that provides financing for commercial equipment leasing. BCL characterizes itself as a lessor of a wide variety of goods purchased from a number of different vendors. BCL leases goods to third parties under a wide variety of agreements
 
 
 [2]
 BCL also sued Danor, and ultimately received a default judgment. Danor is not a party to this appeal
 
 
 [3]
 BCL might then pursue an action for recovery against Danor, though if Danor is insolvent their recovery would be limited